830 So.2d 1278 (2002)
Corey FOREMAN a/k/a Steven Corey Foreman, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00607-COA.
Court of Appeals of Mississippi.
November 19, 2002.
*1279 Thomas E. Royals, Jackson, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
MCMILLIN, C.J., for the court.
¶ 1. Corey Foreman was convicted of aggravated assault following a jury trial. Foreman appeals claiming he received ineffective assistance of counsel. We find on this record no violation of his Sixth Amendment rights, and therefore we affirm.

I.

Facts
¶ 2. On October 30, 2000, fifteen-year-old Johnnie Jean Williams walked to her friend Jessica Foreman's house. Jessica was not home, but her father Corey Foreman was working in the yard. Williams testified that while they were talking, Foreman picked something up which "looked like a little hatchet" and "was trying to put it in his back pocket." Foreman asked her if she wanted to see their new rabbit. They entered the shed located next to the house. Foreman hit Williams over the head with the hatchet, but she did not fall. As Foreman tried to choke her, she fell to the ground. Foreman dropped down, too, and threatened her with a knife unless she quit screaming.
¶ 3. Williams asked Foreman why he was doing this. He responded, "I don't know." Foreman told Williams to stay where she was while he went for help. Finding none, he returned to the shed. When Foreman left the second time again seeking help, Williams ran from the shed to her grandmother's house a short distance away.
¶ 4. Foreman had directed his sixteen year old son who was in the house to call for an ambulance. Williams was treated for the gash in her head. A doctor characterized the wound as life threatening.
¶ 5. A police officer was driving in the vicinity of the Foreman home. While still in his car with the window down, the officer heard Foreman say, "I did it." The officer asked him what he had done. Foreman responded, "Hit Johnnie Jean in the head." The officer asked him what he *1280 had used to hit Williams, and he pointed to an axe.
¶ 6. Foreman was arrested for the aggravated assault of Williams. His defense was that he was insane at the time of the incident. One psychiatrist testified that Foreman understood the difference between right and wrong when he assaulted his victim. A defense expert said that Foreman did not understand. Testimony revealed that Foreman was taking approximately eight different medications at the time of the incident. Testimony also revealed that he had received treatment at the Weems Mental Health Center at various times during the past fifteen years. It is unclear whether any expert witness was provided with a full history of Foreman's mental condition upon which to base a decision regarding Foreman's mental state at the time of the incident.
¶ 7. Foremanwith new appellate counselcontends that failure to develop his defense more thoroughly by adequately examining all the records of various doctors who had treated him for mental problems constituted ineffective assistance of counsel. Foreman also contends that failure to give a jury instruction regarding his defense of "toxic psychosis," as opposed to the general insanity instruction that was given, demonstrated ineffective assistance of counsel.

II.

Discussion
¶ 8. In order to prevail on a claim of ineffective assistance of counsel, the record must prove that counsel's performance was deficient, and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test is applied by assuming that counsel's performance met minimal standards. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The appellate court has to consider the totality of the circumstances in order to determine whether counsel's actions were both deficient and prejudicial. Id. There is no constitutional guarantee to errorless counsel. Strickland, 466 U.S. at 686, 104 S.Ct. 2052.
¶ 9. However, if the record on direct appeal is insufficient to rule on the merits of the claim, then the appellate court should not do so and leave the opportunity for later, complete consideration.
We specifically hold in this case that the record fails to reflect affirmatively a denial of the right to effective assistance of counsel, that on all other issues tendered the appeal is not well taken and that the judgment below should be affirmed, but that this affirmance is without prejudice to the Reads' right via proper postconviction proceedings to litigate fully, if they wish to do so, their claim that at trial they were denied the effective assistance of counsel.
Read v. State, 430 So.2d 832, 837 (Miss. 1983).
¶ 10. Thus our review starts with the merits of the issue of ineffective counsel since it is raised, but also must consider whether we have enough in the record even to rule.
¶ 11. In the present case, Foreman must overcome the presumption that counsel's decisions are a result of sound trial strategy. Strickland, 466 U.S. at 686, 104 S.Ct. 2052. Even if Foreman proves that the trial counsel's performance was deficient, he must further "show a `reasonable probability' that, but for counsel's unprofessional errors, a different outcome would have resulted at trial." Id. at 694, 104 S.Ct. 2052. A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. Id. Keeping this test in mind, we review Foreman's *1281 allegations of ineffective assistance of counsel.
¶ 12. Foreman's defense was that a mental defect negated his criminal responsibility such that he did not know the difference between right and wrong.
A. Deficiencies in Counsel's Performance
¶ 13. Appellate counsel alleges two significant errors by trial counsel. One is a general failure to prepare his expert witness, and specifically to provide the witness with all relevant information before testifying as to a medical conclusion. The other is the failure to request a jury question regarding the specific nature of Foreman's mental problems. We examine each separately.

Inadequate Preparation or Investigation.
¶ 14. Dr. Rodrigo Galvez, the defense expert, was of the opinion that at the time of the incident, Foreman suffered from "toxic psychosis." This would have been a result of the combination of the medicines that he was taking. Galvez further testified that Foreman had a disassociative reaction because Foreman told the doctor that he could not remember actually hitting Williams. Galvez's diagnosis was made upon review of Foreman's medical history, the police report, a letter written by Williams and the psychiatric evaluation report prepared by the State's expert. New appellate counsel argues that Galvez "apparently was not provided Foreman's diagnosis from his other physicians," since Galvez simply stated that he had examined Foreman's "medical history." There was no elaboration of what that meant, and we will not assume that Dr. Galvez failed to be provided relevant medical records.
¶ 15. Appellate counsel also prepared, had signed, and then attached to his brief an affidavit from Dr. Galvez that no physician should have evaluated Foreman's mental state without having examined "all of Foreman's medical records, including all records from the mental health facility where he had been a long-term patient...." The affidavit does not state that Galvez reached his trial opinion without having done so, and indeed does not address at all what Dr. Galvez considered before testifying at trial. Regardless, new evidence cannot be offered on appeal.
¶ 16. At trial, Dr. Galvez did clearly falter when counsel for the State pointed out to Galvez that Foreman had been asked what he had used to hit Williams, and he pointed to the axe. The expert did not know about that statement because it was not in the police report. He agreed that such an action would undermine the claim of amnesia. The expert eventually conceded that upon further consideration of this admission, he might be inclined to reach a different conclusion.
¶ 17. Foreman on appeal contends that even the State's expert, Dr. Mark Webb, reached a conclusion based on insufficient information. Webb relied only on the offense reports and a letter from the victim. Foreman argues that counsel's minimum obligation was to obtain records and make inquiries of Weems Mental Health Center relative to his treatment there over a period of fifteen years.
¶ 18. The State expert, Dr. Webb, may have failed to examine all available information prior to reaching a conclusion, but defense counsel's shortcoming there would have been failing to point that out. As to Dr. Galvez, we cannot determine based on this record what he had been provided. If there were records from various doctors that Dr. Galvez did not see, we also cannot know the significance of them to the opinion that Dr. Galvez reached. Thus we find that the merits cannot be reached as to the *1282 inadequate preparation of the key defense expert witness.
¶ 19. Though Dr. Galvez was unfamiliar with a statement from an officer about Foreman's admitting to using an axe, that is a much more limited shortcoming. Even here, though, we find a lack of clarity in the record since when the officer's statement first became known is not stated. It would appear that counsel himself did not know what the officer would say until his testimony. What pretrial contact counsel had with the witness is unknown. Though we do not have the officer's written report, it appears conceded that the statement about the axe was not in that report.
¶ 20. We find the record incomplete on this part of the ineffective assistance issue.

Jury Instruction Regarding Involuntary Intoxication.
¶ 21. Foreman contends on appeal that his theory of defense was involuntary intoxication or "toxic psychosis." The argument is that this defense was presented through the testimony of Galvez. While Galvez did indeed testify to "toxic psychosis," he also went into a detailed explanation of why he concluded that Foreman was insane under the legally accepted definition of the term. Credible support existed to justify a general instruction on insanity.
¶ 22. A defense counsel's decision to use the traditional definition of insanity, supported by testimony from the defense expert witness, is presumably within the wide range of reasonable professional assistance and "sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Whether to file certain motions, call witnesses, ask certain questions, or make certain objections also fall within the ambit of trial strategy. Cole v. State, 666 So.2d 767, 777 (Miss.1995).
¶ 23. Even if we found that a more thorough investigation could have been conducted or that a better jury instruction could have been given, that by itself is not enough to show ineffective assistance of counsel. Foreman must also be able to show that counsel's failure prejudiced him in such a way that the outcome of the case was substantially affected. We examine that issue as well.
B. Substantial Prejudice
¶ 24. An allegation of ineffective assistance of counsel for failure properly to prepare must state whether any additional investigation, such as interviewing witnesses or investigating facts, would have significantly aided or altered the outcome of the defendant's case at trial. Brown v. State, 798 So.2d 481 (¶ 17) (Miss.2001).
¶ 25. There was substantial evidence of general awareness by Foreman of what he had done. The officer dispatched to the residence heard Foreman say, "I did it." He was asked, "Did what?" to which he responded, "Hit Johnnie Jean over the head." Foreman then pointed to the axe. Seven of the nine witnesses who testified regarding Foreman's character indicated that in their opinions, Foreman knew right from wrong. The testimony showed that over a period of fifteen years Foreman had never experienced a similar episode. He had often been on more than one type of medication. The State's expert testified that the combination of these medications would not have affected Foreman's ability to know right from wrong. Foreman's expert said the opposite.
¶ 26. This issue concerns what the doctors did not consider before reaching their opinions. Since we do not know what that was, and what effect any additional medical records might have had on testimony or on cross-examination, we cannot say what effect the potentially missing information *1283 would have had on the trial. Thus we find that the conviction should be affirmed, but that the record is insufficient for us to rule upon the effectiveness of counsel. Thus we make no ruling on that.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF ELEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.