BARNES, J.,
for the Court:
¶ 1. Mark Fortune was convicted of fondling his brother’s eleven-year-old stepdaughter and sentenced to two years in the custody of the Mississippi Department of Corrections (MDOC). He appeals the conviction, claiming the circuit court erred in denying his jury instruction for “legal unconsciousness due to involuntary intoxication.” Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Fortune, a United States Marine, was deployed to Iraq in 2006. Four months later, he was injured by an improvised explosive device and suffered a concussion and injuries to his back, lower abdomen, and left arm. He was diagnosed with “traumatic brain injury, post-traumatic stress and memory loss” and granted a medical discharge from service. Fortune returned home to Columbus, Mississippi, and resided with his wife, Nikki, at his *833 stepfather’s home. As a result of his injuries, Fortune suffered short-term memory loss and migraines. He took various medications for his symptoms, including Am-bien to help him sleep.[1]
¶ 3. On December 12, 2008, the two stepchildren of Fortune’s brother had a sleepover at Fortune and Nikki’s home. “Chris” (age six) had visited with the couple numerous times; however, “Alice” (age eleven) had only been over at their house a couple of times prior to this occasion.[2] Late that evening, Fortune and the two children sat down in the living room to watch a movie. Right before the movie started, Fortune took Gabapentin, a muscle relaxant, for a migraine and back pain. He also took Ambien, as he had been suffering from insomnia for a couple of days.
¶ 4. Chris, who was lying alone on the loveseat, quickly fell asleep after the movie started. Alice was lying on the couch, and Fortune proceeded to lie down behind her. He later explained that he did so because he was “groggy from the medication[.]” Alice closed her eyes in an attempt to sleep. Fortune took off Alice’s eyeglasses and put them on the nearby table. According to Alice, Fortune began to touch her breasts over her clothing. Alice, who was not asleep, kept her eyes closed and remained still. Fortune lifted her shirt and training bra and resumed touching her breasts. Opening her eyes slightly, she saw Fortune looking at her breasts. She noted that Fortune would occasionally stop and take sips from his tea, which was on the nearby table. He eventually moved her hand down to the outside of his pants near his genitals. Alice moved her hand away, but Fortune kept moving her hand back. She said the fondling ceased when the movie ended and Fortune went to bed.
¶ 5. Alice said nothing about the incident to Fortune or Nikki. However, the next day, she told her mother what had happened. Alice’s mother immediately contacted law enforcement and filed a complaint against Fortune, who was arrested. Investigator James Ferris with the Lowndes County Sheriffs Department interviewed Fortune, who did not deny touching Alice, but said: “When I take my medication!,] I don’t remember a lot. I could have probably confused her for my wife because she is about the same size. I don’t remember if I touched her, because when I am on my medication!,] I do things I don’t remember.”
¶ 6. Fortune was indicted for fondling. At trial, Fortune testified on his own behalf. He stated that, initially, he and Alice were sitting on the couch, but when the medication he had taken before the movie made him “groggy,” he suggested that they “lay down.” Fortune claimed that the influence of the medication made him unable to remember what happened that night, stating:
I’d like to say that I didn’t [touch Alice], but being on my medication not knowing the exact things that happened, I can’t say if I did or not. But me as a person, if I wasn’t on it, I kn[o]w for a fact I would not touch her.
[[Image here]]
I was flabbergasted with the whole ordeal that was going on. I was trying to put in my mind the best way to explain it. The possible way that it could only happen.
*834 Later, he contradictorily stated that he did not believe that he touched her. Upon further questioning, when asked if he thought Alice was lying, he admitted that although he would like to say she was, he could not “because [he] cannot remember the exact details of that evening.” Fortune continued to assert that the medication rendered him unconscious of his actions.
Q. And are you saying that the medication made you do something?
A. Possibly, yes.
Q. Do you know if the medication made you do anything?
A. I do not know.
[[Image here]]
Q. Were you conscious when she says you were touching her?
A. When she says that I’ve touched her that night?
Q. Yes.
A. No, I was not conscious.
¶ 7. Nikki, his wife, claimed that Fortune had occasional memory lapses. However, she also testified that she did not believe that Fortune touched Alice, even under the influence of medication. Nikki stated that she was constantly present in or near the living room during the movie, although she later admitted to folding laundry in the adjacent bedroom for part of the evening. Alice testified that Nikki was not present in the living room; in fact, Alice thought Nikki had gone to bed.
¶ 8. To advance Fortune’s claim that the medication rendered him unconscious of his actions, the defense submitted into evidence the “medication guide” regarding Ambien use and its possible side effects, one of which includes performing acts without being aware of one’s actions. Specifically, the medication guide noted that a “serious side effect” of Ambien is that a person “may get up out of bed while not being fully awake and do an activity that [he] do[es] not know [he is] doing.” Reported activities include “driving a car,” “having sex,”[3] and “sleep-walking.” The State objected to the admission of this evidence “on the basis that voluntary intoxication is not a defense.” The State also argued that the evidence was “misleading” and “irrelevant.” Over the State’s objection, the circuit court allowed Fortune to submit the medication guide regarding Ambien’s side effects into evidence.[4]
¶ 9. During the jury-instruction phase of the proceedings, the issue of Fortune’s alleged unconsciousness was addressed further. Fortune submitted Jury Instruction D-2A, which instructed the jury on the defense of “legal unconsciousness.” The proposed instruction stated:
The defendant, is not guilty of fondling if he acted while legally unconscious. Someone is legally unconscious when he or she is not conscious of his or her actions. Someone may be unconscious even though able to move. Uncon *835 sciousness may be caused by certain conditions such as epileptic seizures, blackout, sleepwalking, or by certain medicines.
The State must prove beyond a reasonable doubt that the defendant was conscious when he acted. If there is proof beyond a reasonable doubt that the defendant acted as if he were conscious, you should conclude that he was conscious. If, however, based on all the evidence, you have reasonable doubt that he was conscious, you must find him not guilty.
The judge denied the instruction and also denied Jury Instruction S-3, which concerned voluntary intoxication.[5] The circuit court, however, did grant Jury Instruction D-3 over the State’s objection. The instruction stated:
The word[ ] “willfully,” as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with [a] ' bad purpose either to disobey or disregard the law.[6]
The circuit judge explained his reasoning for denying Jury Instruction D-2A and S-3:
[Fortune] says that he lacked the intent to do that which the State is charged him with doing. But more importantly, I think the real theory is that if I did it, I don’t know I did it because I was under the influence of a prescription drug. That’s what I see. It’s the willfulness of the act that he’s accused of doing. A specific intent. And I’ve granted your instruction on that issue and defined what the willful conduct of someone that is charged like that is, what the intent is and define[d] what willful is for them.
[[Image here]]
You can argue willful all you want to to the jury, and lack of specific intent, and that he was on medication prescribed by a physician or nurse practitioner, VA, or whomever. Those are all good points that I think you can argue to a jury on the issue of willfulness. I will not comment on the evidence, however, by way of a jury instruction.
¶ 10. Fortune was convicted and sentenced to two years in the custody of the MDOC. He was also fined $1,000. Fortune filed a motion for a new trial, which the circuit court denied. Fortune now appeals, claiming that it was error for the *836 circuit judge to deny Jury Instruction D-2A. Finding no error, we affirm.
DISCUSSION
I. Whether the circuit court erred by denying Jury Instruction D-2A, which presented a defense theory of “legal unconsciousness.”
¶ 11. Fortune argues that the circuit judge erred in denying Jury Instruction D-2A. In reviewing a circuit court’s grant or denial of a jury instruction, we examine the jury instructions “as a whole to determine whether the jury was fully and fairly instructed according to the applicable law.” Jackson v. State, 68 So.3d 709, 712-13 (¶ 12) (Miss.Ct.App.2011) (quoting Clark v. State, 40 So.3d 531, 544 (¶ 36) (Miss.2010)). “[I]f all [the] instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.” Id. Although a defendant is entitled to jury instructions “which present his theory of the case, ... the [circuit] court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Ford v. State, 52 So.3d 1245, 1247 (¶ 10) (Miss.Ct.App.2011) (quoting Hager v. State, 996 So.2d 94, 97 (¶ 9) (Miss.Ct.App.2008)).
¶ 12. On appeal, Fortune claims that he “was operating in a state of automatism or unconsciousness” and that “[t]he jury should have been able to properly consider [his] defense of legal unconsciousness due to his involuntary intoxication.” Mississippi has not recognized legal unconsciousness or automatism as a defense. There are only two cases in Mississippi that address the issue of a defendant’s involuntary intoxication-neither concerns whether a defendant may make a defense of involuntary intoxication.[7] Thus, the issue of whether a criminal defendant may assert a defense of legal unconsciousness or automatism based upon use of a prescribed narcotic is one of first impression for Mississippi courts.
¶ 13. Defense counsel informed the circuit judge that Jury Instruction D-2A was “a model jury instruction from the State of California.” In fact, the term “legally unconscious” is confined to California jurisdictions. The California Supreme Court has stated that “[u]neonsciousness, if not induced by voluntary intoxication, is a complete defense to a criminal charge.” People v. Halvorsen, 42 Cal.4th 379, 64 Cal.Rptr.3d 721, 165 P.3d 512, 538-39 (2007). “If the defense presents substantial evidence of unconsciousness, the trial court errs in refusing to instruct on its effect as a complete defense.” Id. at 539.
¶ 14. California, however, has a statute directly on point. California Penal Code section 26 (2008) states: “All persons are capable of committing crimes except those ... [p]ersons who committed the act charged without being conscious[.]” Model Penal Code article 2, section 2.01 also *837 sets forth the requirements of a “voluntary act.” It states that “[a] person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act or the omission to perform an act of which he is physically capable.” Id. A “voluntary act” excludes any “bodily movement during unconsciousness or sleep” or “conduct during hypnosis or resulting from hypnotic suggestion.” Id.
¶ 15. Mississippi, however, has no statute similar to either California’s statute or the Model Penal Code. Therefore, these authorities that rely on the California Penal Code or the Model Penal Code are not applicable. We are mindful, however, that “[a] criminal defendant is entitled to present his defense to the finder of fact.” Jobe v. State, 97 So.3d 1267, 1269 (¶ 9) (Miss.Ct.App.2012) (quoting Keys v. State, 635 So.2d 845, 848 (Miss.1994)).
¶ 16. Automatism is defined as “the state of a person who, capable of action, is not conscious of what he is doing.” Wayne R. LaFave, Substantive Criminal Law § 9.4(b) at 33 (2nd ed.2003) (citation omitted).
It is ... equated with unconsciousness, involuntary action and implies that there must be some attendant disturbance of conscious awareness. Undoubtedly automatic states exist[,] and medically they may be defined as conditions in which the patient may perform simple or complex actions in a more or less skilled or uncoordinated fashion without having full awareness of what he is doing.... [Automatic acts can occur during sleepwalking and hypnagogic states.

Id.

¶ 17. We find LaFave’s treatment of this issue to be extremely helpful to our analysis. He states: “Although the cases in the United States are not substantial in number, they support the proposition that automatism is a defense.” LaFave, § 9.4(b) at 34; see also Haskell v. Berghuis, 695 F.Supp.2d 574, 591 (E.D.Mich.2010) (“Automatism has been recognized by courts as a valid defense bearing on the voluntariness of an otherwise criminal act.” (quoting Haynes v. United States, 451 F.Supp.2d 713, 724 (D.Md.2006))); Riley v. Commonwealth, 277 Va. 467, 675 S.E.2d 168, 175 (2009) (‘Where not self-induced, unconsciousness is a complete defense to a criminal homicide.”); State v. Jones, 137 N.C.App. 221, 527 S.E.2d 700, 706 (2000) (“Unconsciousness is a complete defense to a criminal charge because it precludes both a specific mental state and a voluntary act.”); Fulcher v. State, 633 P.2d 142, 147 (Wyo.1981) (ruling that the defense of unconsciousness “is an affirmative defense”). LaFave continues that while it has been argued that the automatism defense “is best treated as an excuse because ‘it is not qualitatively different from other excusing conditions[,]’ ” the more common automatism case might well be categorized as a “failure of proof’ defense “since ... modern criminal codes treat the voluntary act requirement as a necessary element of each offense[.]” LaFave, § 9.1(b) at 11 (citation omitted).
The basis of the automatism defense is seldom made clear in the cases .... [One] explanation is that the automaton-defendant is not criminally liable because he lacks the mental state which the crime requires, and this appears to be the rationale most commonly hinted at in these cases. However, it is undoubtedly more correct to say that such a person is not guilty of a crime because he has not engaged in an “act” (defined as a voluntary bodily movement)[,] and without an act there can be no crime. This rationale, which is employed in the Model Penal Code, goes well beyond the no-mental-state reasoning, for it would support an automatism defense to a *838 charge of a strict-liability offense. But under either of the[se] two theories the defense, if successful, results in outright acquittal.[8]
LaFave, § 9.4(b) at 36 (emphasis added).
¶ 18. While LaFave disagrees that mens rea is the best rationale for the automatism defense, he acknowledges that it is the “most common[]” rationale utilized by the cases. Id. We find the circuit court properly instructed the jury on the issue of the requisite mens rea and provided Fortune with an opportunity to present his defense that any inappropriate act committed was due to the effects of Am-bien ingestion. Jury Instruction S-l presented the jury with the elements of fondling, and Jury Instruction D-3 set forth the definition of “willfully.”[9] Both the State and Fortune’s counsel argued the issue of the voluntariness of Fortune’s actions to the jury. The State submitted in its closing argument: “We’re not talking about an involuntary act. That this was a purposeful act with the specific intent to do something the law forbids.... I believe that’s really the heart of this case. That’s the issue that y’all are really going to have to decide.” (Emphasis added). Likewise, defense counsel said in its closing arguments: “Now the Court gives you an instruction on whether this is mllful or not. Means that an act was committed voluntarily and purposely with the specific intent to do something the law prohibits.” (Emphasis added). The defense reiterated that Ambien can make a person “do[] activities [they are] not fully aware of,” and concluded that “[if] anything happened that day, it happened in an unconscious/subconscious state and was not intentional.” Fortune was thus afforded an opportunity to negate the element of vol-untariness through the evidence of Am-bien’s side effects in the medication guide that was presented to the jury.
¶ 19. Reading the jury instructions as a whole, we find that the jury “was fully and fairly instructed according to the applicable law.” See Jackson, 68 So.3d at 713 (¶ 12). In this case, it was undisputed that Fortune ingested Ambien prior to the incident, and the jury was fully informed of the side effects of the drug. If the jury believed that Fortune was unconscious due to the effects of Ambien when committing the act of fondling, the jury would have found Fortune “not guilty.” See LaFave, § 9.4(b) at 36 (successful defense under mens rea rationale would “result[ ] in outright acquittal”).
¶ 20. Accordingly, we find no error in the circuit court’s denial of Jury Instruction D-2A.
II. Whether the circuit court erred in denying Fortune’s motion for a new trial.
¶ 21. “A motion for a new trial challenges the weight of the evidence.” *839 Gordon v. State, 76 So.3d 198, 202 (¶ 13) (Miss.Ct.App.2011) (citing Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003)). “We will not set aside a guilty verdict for the reason that it is against the weight of the evidence, unless it is clear that the verdict is the result of bias, prejudice, or is manifestly against the overwhelming weight of the evidence.” Id. (quoting Flanagan v. State, 605 So.2d 753, 757 (Miss.1992)). Thus, unless a verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice,” we will not reverse the verdict on appeal. Id. (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)).
¶22. Fortune argues that “the overwhelming weight of the evidence suggest[s] that [he] was unaware of his actions” and that he lacked the requisite intent to commit fondling. Fortune never denied that he fondled Alice; he merely claimed he did not remember doing so. Fortune confessed: “[W]hen I am on my medication, I do things I don’t remember.” However, we find that Fortune’s loss of memory is not the issue. See Brown v. State, 290 S.W.3d 247, 251 n. 2 (Tex.App.2009) (stating that “loss of memory is not a defense”); Nelson v. State, 149 S.W.3d 206, 212 (Tex.App.2004) (finding defendant not entitled to instruction since he took his prescription medication voluntarily with full knowledge of its effects, and there was no evidence he was unconscious).
¶ 23. Furthermore, the record reflects that Fortune remembered the movie credits rolling when the movie ended. He remembered taking off Alice’s glasses. Alice claimed that Fortune intermittently drank his tea located on the nearby table during the fondling episode. He also remembered getting up from the couch and going to bed. As Investigator Ferris noted in his testimony:
Once he told me about not being able to remember a lot of things, I asked him did he remember what he was wearing. He was able to tell me what he was wearing. I believe he told me about the credits of the TV. In my mind[,] he could remember a lot other than, you know, what she had said he had done.
Fortune testified that he had been taking Ambien since October 2006 and said that this “was [his] first time ever doing anything like that[.]” Fortune admitted the only part of the evening that he could not remember was when he fondled Alice, and there was no evidence presented that he was acting odd, unconscious, or in any type of altered state.
¶ 24. Finding that the jury’s acceptance of Alice’s testimony over Fortune’s testimony was not against the overwhelming weight of the evidence so as to sanction an unconscionable injustice, we affirm the judgment of the circuit court.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF FONDLING AND SENTENCE OF TWO YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. According to its medication guide, Ambien (zolpidem tartrate) "is a sedative-hypnotic (sleep) medicine.” Ambien "is used in adults for the short-term treatment of a sleep problem called insomnia.”

. Fictitious names have been used to protect the identities of the minor children involved.

. The term for having sex while in a sleep-like state is called "sexsomnia.” See 12 J. Gender Race & Just. 687 (Spring 2009).

. The State later requested the introduction of Fortune’s medical records and testimony by a treating medical provider into evidence; however, the circuit court held that the mere fact that his memory loss was placed in issue did not, by itself, constitute a waiver of Fortune’s medical privilege. Stating that it was a "collateral issue, ... not a central issue,” the judge ruled that the State could call a witness to testily as to the "generally recognized effects” of Ambien but not to testify regarding her specific treatment as Fortune's medical provider. Accordingly, the jury only had Fortune’s testimony that he was, in fact, ever prescribed Ambien. Although Nikki testified Fortune was taking sleep medication, she was not aware of the names of his medications.

. At trial, the State argued: “[Fortune] voluntarily took [Ambien] knowing what the side effects are.” Fortune confessed he was aware of the warnings for potential side effects of Ambien, testifying that "a list of actions and reactions that could happen while taking the medication” was provided by the pharmacist when he obtained his Ambien prescription. These warnings stated that Ambien should be taken "right before you get in bed, not sooner.” The medication guide submitted to the jury also stated in bold type: "Do not take AMBIEN with other medicines that can make you sleepy.” Fortune admitted to taking Am-bien with a muscle relaxant, Gabapentin. In People v. Mathson, 210 Cal.App.4th 1297, 149 Cal.Rptr.3d 167, 194 (2012), the appellate court found that the defendant was voluntarily intoxicated since he "knew or should have known” Ambien could "cause[] sleep driving,” even though he had not experienced a prior episode. Thus, the California court held that an unconsciousness instruction was not warranted. Id.

. This instruction correlated to Jury Instruction S-l, which set forth the elements of the crime of fondling. The instruction required the jury to find beyond a reasonable doubt that Fortune "unlawfully, willfully and felo-niously, and for the purpose of gratifying his lust and indulging his depraved, licentious sexual desires,” committed the act for which he was charged.

. In Foreman v. State, 830 So.2d 1278, 1282 (¶21) (Miss.Ct.App.2002), the Mississippi Supreme Court concluded that the failure to present a defense of "toxic psychosis” versus the traditional defense of insanity did not constitute ineffective assistance of counsel. We note that Fortune made no claim or defense of insanity.
Further, in Kircher v. State, 753 So.2d 1017, 1023 (¶ 22) (Miss.2000), the supreme court considered a defendant’s claim that his confession should not have been admissible as evidence, as "he was "involuntarily intoxicated” when it was given. He claimed that his prescribed anti-depression medication, as well as the hospital treatment conducted while giving his statement to police, rendered him unable to understand his rights. The supreme court concluded that there was sufficient evidence presented that "the confession was free and voluntary[.]” Id. at 1027 (¶ 42).

. While there are similarities between an insanity defense and an automatism defense, "the automatism defense may be present notwithstanding the defendant's lack of the 'mental disease or defect[,]’ which insanity requires.” LaFave, § 9.4(b) at 36; see also State v. Caddell, 287 N.C. 266, 215 S.E.2d 348, 363 (1975) ("[U]nconsciousness, or automatism, is a complete defense to a criminal charge, separate and apart from the defense of insanity."). "The principal reason for making a distinction between the defense of unconsciousness and insanity is that the consequences which follow an acquittal[] will differ.” Fulcher, 633 P.2d at 145.

. Fondling, unlike statutory rape, is not a strict-liability crime; it requires specific intent to commit the act "for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires.” Compare Miss.Code Ann. § 97-5-23(1) (Rev. 2006) (fondling) with Miss.Code Ann. § 97-3-65 (Rev.2006) (statutory rape).