# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-01778-SCT

*JOHN ASHLEY HALE a/k/a JOHN ANTHONY*
*HALE a/k/a JOHN HALE*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2014 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEY: | ROBERT C. STEWART |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER BY: MOLLIE M. McMILLIN GEORGE T. HOLMES HUNTER N. AIKENS JOHN ASHLEY HALE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     John Ashley Hale was convicted of four counts of sale or transfer of a controlled substance and was sentenced as an habitual offender to serve a total of sixteen years' imprisonment without the possibility of parole. On appeal, Hale, represented by the Office

of Indigent Appeals, argues that the trial court erred in denying his proffered jury instructions on the defenses of involuntary intoxication and entrapment. Hale also has filed a pro se supplemental brief, in which he raises various other issues. Finding no error, we affirm Hale's convictions and sentences.

## FACTS & PROCEDURAL HISTORY

¶2. At approximately 10:00 p.m. on June 20, 2013, Lieutenant Aldon Helmert with the Biloxi Police Department and several other investigators executed a search warrant at an apartment on Eisenhower Drive in Biloxi, Mississippi. The search warrant was unrelated to the instant case. After executing the warrant, Lieutenant Helmert stepped out onto the apartment's balcony to get some fresh air. Lieutenant Helmert and the other investigators were in plain clothes at this time. While standing on the balcony, Lieutenant Helmert observed Hale and another man walking down the sidewalk below him. Hale asked Lieutenant Helmert what he was doing, and Lieutenant Helmert replied that he was "partying." Hale asked Lieutenant Helmert if they were drinking alcohol, and Lieutenant Helmert responded with "something more than that." Hale then asked Lieutenant Helmert if he wanted "anything else, " and Lieutenant Helmert responded in the affirmative. Outside the apartment, Lieutenant Helmert and Investigator David Elliot met with Hale. Hale told the investigators that he had some oxycodone pills that he would be willing to sell. Lieutenant Helmert bought two of these pills from Hale with a prerecorded twenty-dollar bill that he kept in his wallet.

2

¶3. Hale then left the scene, but he returned about fifteen minutes later and made contact with Lieutenant Helmert. Lieutenant Helmert observed that Hale seemed alert and was aware of his surroundings. According to Lieutenant Helmert, "[Hale] seemed as though he had been drinking, but he was not intoxicated." Investigator Elliot purchased six more oxycodone pills from Hale with sixty dollars of prerecorded money. Hale also sold Investigator Kenneth Garner four morphine pills and seven alprazolam pills. Investigator Garner paid for these pills with a prerecorded one-hundred-dollar bill. Hale then returned to his apartment with Investigator Garner and gave him two more morphine pills and another alprazolam pill. Investigator Garner testified that he could tell that Hale had been drinking, but he did not seem intoxicated. However, Investigator Garner later observed Hale drink an unidentified liquid from a medicine bottle, and his condition worsened after that point. When Hale and Investigator Garner returned to the apartment where the other investigators were located, Hale was arrested.

¶4. After arresting Hale, the investigators recovered the prerecorded money they had given him and packaged all of the pills to be transported to the Mississippi Crime Laboratory for testing. Hale then was transferred to the Biloxi Police Department for booking. Sometime after he arrived at the police department, Hale fell ill and was transported to the hospital emergency room by ambulance for a possible drug overdose. The specific details of this incident are unclear, as Hale claims not to remember anything from the night in question and none of the investigators who testified at trial was with Hale at the police department.

¶5. On November 18, 2013, Hale was indicted for six counts of sale or transfer of a controlled substance and one count of possession of a controlled substance with intent to distribute. Count I charged Hale with selling oxycodone to Lieutenant Helmert. Count II charged Hale with selling oxycodone to Investigator Elliot. Count III charged Hale with selling morphine to Investigator Garner. Count IV charged Hale with selling oxycodone to Wayne Moore. Count V charged Hale with selling morphine to Wayne Moore. Count VI charged Hale with selling alprazolam to Investigator Garner. Count VII charged Hale with possession of oxycodone with intent to distribute. The indictment was later amended to charge Hale as an habitual offender under Section 99-19-81 of the Mississippi Code. Trial commenced on October 6, 2014. At trial, Lieutenant Helmert, Investigator Elliot, and Investigator Garner testified regarding their interactions with Hale on the night in question. John Moran, a forensic scientist with the Mississippi Crime Laboratory, also testified and confirmed that the pills Hale had sold to the investigators actually were oxycodone, morphine, and alprazolam. The pills and the prerecorded money used to buy them were admitted into evidence.

¶6. Hale testified in his own defense at trial. He testified that he is a military veteran and has numerous health problems, including Post-Traumatic Stress Disorder and chronic back pain. He has prescriptions for numerous medications, including oxycodone, morphine, and alprazolam. He testified that he takes each of these medications approximately three times a day. His wife died in February 2013, so he was living with some friends during the period in question. On June 20, 2013, he was visiting his friend Jason Phillips at the apartment

4

complex on Eisenhower Drive. Hale cooked dinner and sent Phillips to the store to get something to drink. Phillips returned with some grapefruit juice. Hale confirmed that he had taken all of his medications a few hours before cooking dinner. He testified that he started to feel strange after drinking the grapefruit juice, and he claimed to have no memory of anything from that point until he woke up in the hospital the next day. Hale suggested that Phillips had drugged his grapefruit juice before giving it to him. He testified that he did not remember having any interactions with Lieutenant Helmert or the other investigators and claimed that the first time he had seen them was at trial. On cross-examination, Hale conceded that his medical records did not include any reference to grapefruit juice. He also stated that he had been on his medications for a long time but never knew that grapefruit juice could interact negatively with them.

¶7.     At the conclusion of trial, the parties and the trial court discussed jury instructions outside the presence of the jury. Hale did not object to any of the court's or the State's instructions. Hale offered Instruction D7A, which defined the defense of involuntary intoxication. Hale's primary defense was that the grapefuit juice that he drank on the night in question interacted with his medication and rendered him in a "state of automatism," meaning he had no control of his actions. The trial court refused to give this instruction, finding that it was adequately covered by other instructions defining the term "willfully." Hale also offered Instruction D8A, which covered the defense of entrapment. He claimed that the investigators had enticed him, in his state of automatism, to commit a crime that he normally would not have committed. The trial court refused this instruction, finding that it

5

was not supported by the evidence. After being instructed, the jury returned a verdict finding Hale guilty of Counts I, II, III, and VI. The trial court sentenced Hale to eight years' imprisonment without the possibility of parole for each conviction. The sentences in Counts I and II were ordered to run consecutively to each other, and the sentences in Counts III and VI were ordered to run concurrently with Counts I and II.

¶8.     Hale now appeals to this Court, represented by the Office of Indigent Appeals, arguing that the trial court erred in refusing Instructions D7A and D8A.  Hale also has filed a pro se supplemental brief, in which he raises several other assignments of error.

**STANDARD OF REVIEW**

¶9.     This Court reviews the grant or denial of jury instructions for abuse of discretion. *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012).  "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010) (quoting *Hearn v. State*, 3 So. 3d 722, 738 (Miss. 2008)).  "The jury instructions actually given must be read as a whole.  When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Rubenstein v. State*, 941 So. 2d 735, 785 (Miss. 2006).

**DISCUSSION**

I.      **Whether the trial court erred in denying Instruction D7A on involuntary intoxication.**

¶10.    Hale was charged with violating Section 41-29-139(a)(1) of the Mississippi Code, which provides that "it is unlawful for any person knowingly or intentionally . . . [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2013).  Hale's primary defense at trial was that an unforeseen interaction between his prescription medication and the grapefruit juice he drank on the night in question caused him to become involuntarily intoxicated, incapable of controlling his own actions. Instruction D7A set forth Hale's defense of involuntary intoxication and provided:

> A person is voluntarily intoxicated by voluntarily using any intoxicating drug, drink or other substance knowing that it could cause an intoxicating effect or voluntarily assuming the risk that it could cause intoxication.  A person, however, can be involuntarily intoxicated if they experience an unforseen or unintended reaction to a legally prescribed medication(s) taken as medically prescribed.

> If you find that when the defendant is not intoxicated, he is capable of knowing right from wrong, and that the defendant voluntarily became intoxicated so that he did not know or understand the act of transfer of a controlled substance, then the defendant is responsible for the crime of transfer of a controlled substance, and his voluntary intoxication is not a defense to the crime.  If you find, however, that the defendant was involuntarily intoxicated due to an unforeseen or unintended reaction to a legally prescribed medication(s) taken as medically prescribed and was incapable of knowing right from wrong so that he did not know or understand the act of transfer of a controlled substance, then the defendant is not responsible for the crime of transfer of a controlled substance.

The trial court denied this instruction, finding that it lacked an evidentiary basis, because Hale had not presented any evidence of the side effects of his medication or any possible negative interactions between grapefruit juice and his medication.  The trial court also found that Hale's theory of defense was covered by other instructions requiring the jury to find that

7

Hale willfully had sold the pills to the investigators and defining the term "willfully." On appeal, Hale argues that the trial court precluded him from presenting his theory of the case by denying Instruction D-7A.[1]

¶11.    An essential element of the crime with which Hale was charged was that he had knowledge that he was selling or transferring a controlled substance and that he intended to do so. *See Applegate v. State*, 301 So. 2d 853, 855 (Miss. 1974). Hale essentially argues that he did not have knowledge of his actions because he was in a state of intoxication at the time. The law in Mississippi is clear that *voluntary* intoxication is not a defense to a specific-intent crime. *McDaniel v. State*, 356 So. 2d 1151, 1161 (Miss. 1978). The rule has been stated by this Court as follows:

> If a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts.

*Id.* Thus, if Hale voluntarily became intoxicated prior to selling pills to the investigators, his intoxication would not serve as a defense. However, this Court has not addressed whether Mississippi law recognizes the defense of *involuntary* intoxication that Hale asserts.

---

[1] Hale's appellate counsel failed to cite any authority in support of this argument. The only cases cited in counsel's brief discuss the standard of review for jury instructions but have no relation to the substantive argument Hale asserts. Generally, a party's failure to cite any authority in support of an argument precludes this Court from addressing that argument on appeal. *Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994) (citations omitted). However, we will address this issue because Hale supported his argument with authority in his pro se brief.

8

¶12. Hale refers to his defense as "involuntary intoxication," but his theory of the case can more appropriately be labeled "automatism," which has been defined as an involuntary condition "in which the patient may perform simple or complex actions in a more or less skilled or uncoordinated fashion without having full awareness of what he is doing." *Fortune v. State*, 110 So. 3d 831, 837 (Miss. Ct. App. 2013) (quoting Wayne R. LaFave, *Substantive Criminal Law* § 9.4b at 33 (2d ed. 2003)). The courts that have considered this issue generally have held that automatism can be asserted as a defense to a criminal charge. *See* **McLain v. State**, 678 N.E.2d 104, 106 (Ind. 1997) (citing Eunice A. Eichelberger, Annotation, *Automatism or Unconsciousness as Defense to Criminal Charge*, 27 A.L.R. 4th 1067, § 3(a) (1984)). A successful automatism defense negates the requisite intent for a criminal offense, but it also eliminates the voluntariness of the criminal act. **State v. Hinkle**, 489 S.E.2d 257, 264 (W. Va. 1996).

¶13. The Court of Appeals recently has considered a similar argument to Hale's and provided some persuasive analysis on the issue of automatism. **Fortune v. State**, 110 So. 3d 831 (Miss. Ct. App. 2013). In **Fortune**, the defendant was charged with fondling an eleven-year-old relative. **Id.** at 833. At trial, he testified that he had taken a prescribed muscle relaxant and an Ambien on the night of the offense and did not remember what had happened. **Id.** He testified, "I'd like to say that I didn't [fondle the victim], but being on my medication and not knowing the things that happened, I can't say if I did or not. But me as a person, if I wasn't on [medication], I kn[o]w for a fact I would not touch her." **Id.** He also admitted into evidence the "medication guide" regarding Ambien's possible side-effects,

9

which include incidents in which the person "may get up out of bed while not being fully awake and do an activity that [he] do[es] not know [he is] doing." *Id.* at 834. At the conclusion of trial, the defendant offered a jury instruction on involuntary intoxication that required the jury to find the defendant not guilty if a reasonable doubt existed as to whether the defendant was "conscious" when he committed the crime. *Id.* at 834-35. The trial court denied this instruction but granted another defense instruction defining the term "willfully" as follows:

> The word[] "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposefully, with the specific intent to do something the law forbids, that is to say, with [a] bad purpose either to disobey or disregard the law.

*Id.* at 835. The jury ultimately found the defendant guilty of the charged offense. *Id.*

¶14.     On appeal, the defendant argued that the trial court had erred in denying his jury instruction on the defense of "legal unconsciousness." *Id.* at 836. The Court of Appeals noted that this issue was one of first impression in Mississippi. *Id.* The Court of Appeals then reviewed caselaw from various other jurisdictions, noting that the majority of courts viewed automatism as a defense to criminal intent. *Id.* Ultimately, the Court of Appeals found that the trial court had instructed the jury properly on the issue of the requisite mens rea and allowed the defendant to present his argument that any criminal act committed was caused by an uncontrollable side-effect of his prescription medication. *Id.* at 838. The jury instructions also required the jury to find that the defendant had acted willfully, and the defendant was afforded an opportunity to negate this element with evidence of Ambien's side-effects. *Id.* Accordingly, the Court of Appeals held that the jury instructions fairly

10

announced the applicable law of the case, finding that "[i]f the jury believed that Fortune was unconscious due to the effects of Ambien when committing the act of fondling, the jury would have found Fortune 'not guilty.'" *Id.*

¶15.   In the instant case, we find that Hale failed to provide a sufficient evidentiary basis to support his proffered instruction and that his theory of the case was covered by other instructions.  Like the defendant in *Fortune*, Hale argues that his criminal act was committed while he was in an involuntary state of intoxication, incapable of controlling his own actions. However, unlike the defendant in *Fortune*, Hale offered no evidence indicating that his medication, or some interaction between grapefruit juice and his medication, could cause the sort of behavior in which he engaged on the night in question.  Nevertheless, the trial court in the instant case properly instructed the jury on every element of the charged offense and also gave the above-quoted instruction from *Fortune* defining the word "willfully." *See Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996) (quoting *Ousley v. State*, 122 So. 731, 732 (Miss. 1929) ("This Court has stated that 'it is inconceivable that an act willfully done is not also knowingly done.' Stated differently, 'willfully' means 'knowingly.' Moreover, 'wil[l]ful' means nothing more than doing an act intentionally."). Just as the Court of Appeals explained in *Fortune*, the instructions given at Hale's trial adequately informed the jury of the applicable law, and Hale was able to present his defense to the jury.  Accordingly, we find Hale's argument to be without merit.

    **II.**    **Whether the trial court erred in denying Hale's proffered entrapment instruction.**

¶16.   At the conclusion of trial, Hale offered Instruction D8A, which covered the defense

of entrapment. He claimed that a factual dispute existed as to whether Lieutenant Helmert had induced him into selling the pills by making initial contact with him outside the apartment. The trial court denied this instruction, finding that it lacked an evidentiary basis. Because Hale claimed he did not remember what happened on the night in question, the trial court had to rely on the testimony of the investigators, who all stated that Hale had initiated both the initial conversation and the subject of selling pills. The investigators testified that they "enticed" Hale to come back to the apartment later that night only so they could arrest him safely. Based on this evidence, the trial court found that Hale had not presented sufficient evidence to support an entrapment instruction. On appeal, Hale argues that the trial court's denial of his entrapment instruction was in error.

¶17.    "Entrapment has been defined as 'the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense." *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993) (quoting *Phillips v. State*, 493 So. 2d 350, 354 (Miss. 1986) (internal citations omitted)). Entrapment is an affirmative defense which must be proved by the defendant, and "[t]he burden of proof does not shift to the State to show the predisposition for committing the crime until the defendant has made out a prima facie case of entrapment." *Bush v. State*, 585 So. 2d 1262, 1264 (Miss. 1991). Once the defendant makes out a prima facie case of entrapment, he is entitled to have the issue of entrapment submitted to the jury on proper instructions. *King v. State*, 530 So. 2d 1356, 1358 (Miss. 1988). "Whether the entrapment defense – or any other issue of fact – should be submitted to the jury ultimately turns on whether there is in the record credible evidence

12

supporting it." *Id.* at 1359. Stated another way, an entrapment instruction must be given where the defendant presents such evidence which, "if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction." *Phillips*, 493 So. 2d at 353.

¶18. "[A] defendant is not entrapped and enjoys no protection from prosecution when he is already predisposed to commit the crime and when law enforcement officials merely furnish him the occasion or opportunity for doing so." *Tanner v. State*, 566 So. 2d 1246, 1248 (Miss. 1990). Moreover, a defendant is not induced to commit an offense if the evidence shows that he was "ready and willing" to commit the crime when the opportunity presented itself. *Moore v. State*, 534 So. 2d 557, 559 (Miss. 1988). This Court generally has found that evidence of "importuning" by law-enforcement officers generally will serve as sufficient evidence of inducement to commit a crime. *See* *King v. State*, 530 So. 2d 1356, 1357 (Miss. 1988) (confidential informant "had been bugging [the defendant] for months to sell her some marijuana."); *McCollum v. State*, 757 So. 2d 982, 986 (Miss. 2000) (confidential informant followed defendant and repeatedly begged for drugs).

¶19. We find that Hale failed to present sufficient evidence of government inducement. Indeed, because Hale claimed that he did not remember selling pills to the investigators, he offered no evidence at all on this issue. The testimony of the investigators, on the other hand, provides ample evidence that Hale acted of his own volition and was not induced into committing a crime. Lieutenant Helmert testified that Hale initially approached him and asked him what he was doing at the apartment complex. Hale also initiated the criminal act

13

by asking if he could offer "anything else" besides alcohol to Lieutenant Helmert. Hale then retrieved the pills by himself and returned to the investigators to complete the transaction. He even led some of the investigators to another apartment to retrieve more pills and told one investigator that he could come back and purchase more pills from him in the future. As the State correctly explained at trial, the investigators "enticed" Hale to return to the first apartment only after the offenses were complete so they could arrest him. Even viewing this evidence in the light most favorable to the defendant, we find that no rational jury could find that Hale was induced by law-enforcement officers to commit a crime. *Phillips*, 493 So. 2d at 353. Accordingly, the trial court did not err in denying Hale's entrapment instruction.

### III. Whether the State or the trial court failed to respond to Hale's pro se pretrial motions.

¶20. Prior to trial, Hale filed a pro se motion which included, among other things, various discovery requests. This motion was identical in many respects to a discovery motion his attorneys had filed approximately seven months prior. The motion was filed with the trial court on July 23, 2014, but it appears Hale's attorney did not receive a copy until the day before trial during a motions hearing. At the hearing, Hale's attorney reviewed the motion before the trial court and stated that the defense had received the entire case file from the State. The trial court responded, "I would certainly grant that motion," referring to Hale's pro se motion, and the hearing concluded. In his pro se appellate brief, Hale claims that the trial court granted his pro se motion, and he argues that the State withheld exculpatory evidence from him in violation of the trial court's ruling.

14

¶21. We find this argument to be without merit. As previously stated, Hale's attorney filed a discovery motion with essentially identical requests for production around seven months before Hale filed his pro se motion. On the day before trial, Hale's counsel affirmed that they had received all the evidence in the case and were ready to proceed. The trial court did not grant Hale's motion, and the record before this Court does not support Hale's argument that the defense did not receive the evidence it requested.

**IV. Whether the trial court erred in failing to appoint an expert witness for Hale.**

¶22. In his pro se brief, Hale argues that he was denied a fair trial because he did not have the benefit of an expert witness to assist him in explaining his defense of involuntary intoxication. He alleges that the trial court erred in failing to appoint an expert for him, though he never made a request for a court-appointed expert.

¶23. However, the record indicates that Hale actually retained an expert but failed to call him as a witness at trial. Hale's attorneys had notified the State that they intended to call Dr. Alva Dillon, a gastroenterologist, as an expert witness, but they failed to disclose Dr. Dillon's expertise and areas of testimony in a timely manner. Prior to trial, the State moved to exclude Dr. Dillon's testimony, but the trial court reserved ruling on the issue. The defense ultimately did not call Dr. Dillon at trial.

¶24. As no request was made for a court-appointed expert witness, we find no error in the trial court failing to appoint one. *See* ***Green v. State***, 631 So. 2d 167, 171 (Miss. 1994) (citing ***Hansen v. State***, 592 So. 2d 114, 125 (Miss. 1991)) ("Concrete reasons for requiring an expert must be provided by the accused.").

15

## V. Whether Hale's indictment was defective.

¶25. As previously discussed, Hale's indictment charged him with six counts of selling or transferring a controlled substance and one count of possessing a controlled substance with intent to distribute. Prior to trial, Hale filed a pro se motion to dismiss, which included challenges to Counts V, VI, and VII of the indictment. Hale claimed that the allegations in Counts V and VI represented one transaction and could not be charged as separate crimes. He also argued that the allegation in Count VII did not match the allegations in his arrest warrant or charging affidavit. However, Hale did not present any arguments concerning his indictment to the trial court until after he had been convicted. During the hearing on his post-trial motions, Hale raised additional challenges to the indictment, arguing that the indictment failed to specify whether he was charged with a "sale" or "transfer" of a controlled substance. He also argued that the State erred in using a multicount indictment. On appeal, Hale argues that the State's burden of proof is different for sales of controlled substances than for transfers of controlled substances, and the indictment impermissibly lowered the burden of proof.

¶26. Hale has failed to cite any authority supporting his argument. Accordingly, this issue is procedurally barred. *Rubenstein v. State*, 941 So. 2d 735, 780 (Miss. 2006) (citing *Bell v. State*, 879 So. 2d 423, 434 (Miss. 2004)). Procedural bar notwithstanding, this argument is without merit. Section 41-29-139 prohibits the sale *or* transfer of a controlled substance, and this Court has held that "a transfer is any act by which the holder of an object delivers it to another with the intent of passing whatever rights he has in the latter." *Meek v. State*,

16

806 So. 2d 236, 240 (Miss. 2001). While the State clearly proved that Hale actually sold pills to the investigators, "[t]he intent of the deliver and transfer of narcotics statute is 'to thwart the exchange or transfer of the substance *whether accompanied by consideration or not.*'" *Id.* (citing *Wilkins v. State*, 273 So. 2d 177 (Miss. 1973)) (emphasis added). Accordingly, Hale's indictment did not lessen the State's burden of proof in this case.

### VI. Whether Hale received ineffective assistance of counsel.

¶27. Hale contends that his trial attorneys rendered ineffective assistance by failing to secure certain witnesses, including an expert witness, for trial and in failing to disclose those witnesses to the State. A convicted defendant must meet a two-pronged test to prove his trial counsel was unconstitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "First, the defendant must show that counsel's performance was deficient; . . . second, the defendant must show that the deficient performance prejudiced the defense." *Id.* This Court generally does not review claims of ineffective assistance unless the issues raised are " based on facts fully apparent from the record." Miss. R. App. P. 22(b). We find that the record is insufficient to review Hale's claims and therefore they are not appropriate for review on direct appeal. Thus, we dismiss Hale's ineffectiveness claim without prejudice to his ability to raise it in a properly filed petition for post-conviction relief. *See Archer v. State*, 986 So. 2d 951, 956-57 (Miss. 2008).

### VII. Whether Hale's conviction was the product of vindictive prosecution.

¶28. In his final assignment of error, Hale raises various allegations of corruption within the Harrison County law enforcement system and the court system and claims that his

17

conviction were a punishment for his opposition to such corruption. However, none of Hale's allegations was pursued in the trial court, and as a result, none appears in the record. "This Court has long held that it cannot consider that which is not in the record." *Stone v. State*, 94 So. 3d 1078, 1082 (Miss. 2012) (citing *State v. Cummings*, 203 Miss. 583, 591, 35 So. 2d 636, 639 (Miss. 1984)).

## CONCLUSION

¶29. For the foregoing reasons, we affirm Hale's convictions and sentences.

¶30. **COUNT I: CONVICTION OF TRANSFER OF CONTROLLED SUBSTANCE AND SENTENCE OF EIGHT (8) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF TRANSFER OF CONTROLLED SUBSTANCE AND SENTENCE OF EIGHT (8) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL FOR A TOTAL OF SIXTEEN (16) YEARS TO SERVE. COUNT III: CONVICTION OF TRANSFER OF CONTROLLED SUBSTANCE AND SENTENCE OF EIGHT (8) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH THE SENTENCES IN COUNT I AND COUNT II. COUNT VI: CONVICTION OF TRANSFER OF CONTROLLED SUBSTANCE AND SENTENCE OF EIGHT (8) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT VI SHALL RUN CONCURRENTLY WITH THE SENTENCES IN COUNT I, COUNT II AND COUNT III, ALL FOR A TOTAL OF SIXTEEN (16) YEARS TO SERVE. THE APPELLANT SHALL NOT BE ELIGIBLE FOR PAROLE OR PROBATION. APPELLANT SHALL RECEIVE CREDIT FOR ANY AND ALL TIME SERVED AS TO THESE CHARGES.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND MAXWELL, JJ., CONCUR.**